IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | IN CHAPTER 9 PROCEEDINGS |
| | ) | |
| VILLAGE OF WASHINGTON PARK, | ) | BK 09-31744 |
| | ) | |
| Debtor. | ) | |

## DISCLOSURE STATEMENT

### I. INTRODUCTORY STATEMENT

On July 6, 2009 the Village of Washington Park ("Debtor") filed a Voluntary Petition for Reorganization pursuant to Chapter 9 of the United States Bankruptcy Code (the "Code") with the United States Bankruptcy Court for the Southern District of Illinois (the "Court"). This Disclosure Statement is submitted pursuant to Section 1125 of the United States Bankruptcy Code and in connection with the Plan of Adjustment filed by the Village of Washington Park, as Debtor in Possession. The Disclosure Statement must be approved by the Court as containing adequate information to allow a holder of a claim against the Debtor to make an informed decision on the acceptance or rejection of the Plan of Adjustment (the "Plan").

### II. DEBTOR'S HISTORY, OPERATION AND REORGANIZATION

The Village of Washington Park filed for Chapter 9 bankruptcy on July 6, 2009, to obtain protection from a number of lawsuits and claims which threatened to shut down the ability of the Village to provide services to its citizens. The bankruptcy filing is the second filing for the Village having previously filed in May of 2004 but being unable to present a Plan of Adjustment due to lack of sufficient reliable financial records to formulate a plan.
    The Village lacked an accounting system until July 2009 but is now able to provide quarterly statements itemizing revenues and expenses. In January 2008, the government, as part of a federal investigation into financial mismanagement of Village funds, seized the financial records of the Village which were not returned until after this bankruptcy was filed. The federal investigation resulted in the conviction of the Village payroll clerk and an aide to the mayor for embezzlement of Village funds in excess of $440,000.00.
    According to the 2000 Census, there were 5,345 people residing in the Village. To provide for its citizens the Village is governed by a Mayor and a Village Board consisting of six trustees. The current mayor, Cynthia Stovall-Hollingsworth is a member of the board of trustees, having been appointed by the board as Mayor after the murder of Mayor John Thornton in 2010.
    The Board oversees the following Village employees:

    <u>Police Department:</u>    Chief
                                       Assistant Chief

|  |  |
|---|---|
|  | Four full time officers |
|  | Twelve part time officers |
|  | Twelve civilian employees |
| <u>Fire Department:</u> | Chief |
|  | Assistant Chief |
|  | Deputy Chief |
|  | Seven full time firefighters |
| <u>Public Works:</u> | Superintendent |
|  | Four workers |
| <u>City Hall:</u> | Village clerk |
|  | Clerk |
|  | Treasurer |

Among the claims that have put the Village in its present financial straits are employment taxes to the Internal Revenue Service and Illinois Department of Employment Security in excess of $700,000.00, police and firefighters benefit fund claims in excess of $600,000.00, claims by several law firms of approximately $100,000.00, employee claims in excess of $300,000.00 and other lawsuits.

The Village had anticipated receiving substantial revenues from adult entertainment businesses however, through a combination of mismanagement and legal issues the revenues have not been realized.

Mismanagement of past Tax Increment Financing agreements has left the T.I.F. account in turmoil with agreements over extending T.I.F. revenues.

The village infrastructure is in need of attention and the police, fire and street departments are operating under the constraints of lack of equipment and antiquated equipment due to an inadequate tax base.

To reorganize the current administration is seeking additional grant money to provide for a reorganization of its debt in addition to implementing an accounting system to track its revenue and expenses. The Plan of Adjustment provides for the rejection of the current contract with the police department. A restructuring of police department compensation should provide a noticeable reduction in village expenses.

Additionally, the Village will investigate potential recovery of the embezzled funds as it is believed one of the two former employees may have assets that can be recovered through an adversary proceeding in the Bankruptcy Court.

### III. LIQUIDATION ANALYSIS

In Chapter 9 bankruptcy proceedings, a municipal debtor's liquidation cannot be forced. In other words, liquidation is not an option for this Debtor. Debtor's assets consist primarily of buildings and real estate, vehicles and equipment necessary for the operation of the Village to provide governmental services to its citizens. The Debtor's liquid assets are bank accounts which continually fluctuate. These accounts are used to keep the Village of Washington Park in an operating condition. Some of these accounts hold State and Federal funds specifically designated for programs within the Village of Washington Park.

As there is no property which can be liquidated to pay off the debts. All payments for reduction of debt come from the Village's future income.

### IV. INCOME AND EXPENSES FOR SIX MONTHS PRIOR TO FILING BANKRUPTCY
### January through June 2009

**INCOME:**

| | | |
|---|---|---|
| Adjustment for Income: | | $289,872.28 |
| Other Revenue: | | 19,872.86 |
| Building Permits & Inspections: | | 6,493.75 |
| Licenses: | | 41,262.00 |
| Police Fines & Penalties: | | 14,807.01 |
| Sewer: | | 9,111.75 |
| Taxes: | | |
|     Admission | 37,342.00 | |
|     Franchise | 15,751.66 | |
|     Income | 201,012.82 | |
|     Motor Fuel Tax | 67,120.54 | |
|     Replacement | 16,756.37 | |
|     Sales | 74,885.55 | |
|     Sales Usage | 40,475.54 | |
|     Tax Increment Finance | 137.92 | |
|     Telecommunication | 18,085.99 | |
|     Utility | 383.42 | |

|  |  |  |
|---|---:|---:|
| Wheel | 2,481.00 | |
|  |  | 474,432.81 |
| Trash Stickers: |  | 26,974.33 |
| Total Revenue: |  | $882,829.79 |

**EXPENSES:**

| | |
|---|---:|
| Salaries | ($532,358.75) |
| Benefits | (39,855.57) |
| Professional Services | (30,580.68) |
| Contractual Labor | (11,056.00) |
| Supplies | (10,751.04) |
| Postage & Printing | (1,545.50) |
| Fuel | (24,893.44) |
| Uniforms | (850.55) |
| Equipment | (14,306.32) |
| Trash | (16,276.44) |
| Travel & Lodging | (2,433.76) |
| Utilities | (-1,096.42) |
| Telephone | (18,791.37) |
| Maintenance | (1,632.04) |
| Insurance | (13,367.38) |
| Conference & Training | (277.75) |
| Refunds | (310.00) |
| Contracts | (380.47) |
| Real Estate Taxes | (14,062.88) |
| Sales Tax | (10,000.00) |
| TIF | (46,508.00) |
| Bank Service Charges | (2,268.66) |
| Misc. | (7,470.20) |

| | | |
|---|---|---:|
| Total Expenses: | | ($798,880.38) |
| **NET REVENUE:** | | **$83,949.41** |

## V. INCOME AND EXPENSES FOR THE 12 MONTHS DURING BANKRUPTCY
### July 2009-June 2010

INCOME:

| | | |
|---|---:|---:|
| Adjustment for Income: | | (-$3,933.73) |
| Other Revenue | | 50,221.33 |
| Building Permits & Inspections | | 12,645.02 |
| Licenses | | 68,390.00 |
| Police Fines & Penalties | | 26,562.46 |
| Sewer | | 10,843.40 |
| Taxes: | | |
|     Admission | 85,464.00 | |
|     Franchise | 26,960.21 | |
|     Income | 279,618.51 | |
|     Motor Fuel Tax | 108,040.24 | |
|     Replacement | 39,441.32 | |
|     Sales | 146,237.56 | |
|     Sales Usage | 65,580.75 | |
|     Tax Increment Finance | 522,540.16 | |
|     Telecommunication | 16,966.80 | |
|     Utility | 2,885.04 | |
|     Wheel | 3,240.00 | |
| | | 1,296,974.59 |
| Trash Stickers | | 39,957.90 |
| | | |
| Total Revenue: | | $1,501,660.97 |

EXPENSES:

| | |
|---|---:|
| Salaries | (1,126,351.48) |
| Benefits | (84,656.21) |
| Professional Services | (224,607.48) |
| Contractual Labor | (43,623.60) |
| Supplies | (17,247.36) |
| Postage & Printing | (4,390.30) |
| Fuel | (51,607.77) |
| Uniforms | (2,868.94) |
| Equipment | (67,081.69) |
| Trash | (39,426.04) |
| Travel & Lodging | (6,235.76) |
| Utilities | (35,229.70) |
| Telephone | (35,423.75) |

| | |
|---|---:|
| Maintenance | (3,843.23) |
| Insurance | (119.00) |
| Conference & Training | (1,114.00) |
| Refunds | (500.00) |
| Contracts | (4,343.18) |
| Real Estate Taxes | (11,446.83) |
| Sales Tax | (32,000.00) |
| TIF | (152,964.31) |
| Bank Service Charges | (3,104.78) |
| Misc. | (16,431.15) |
| | |
| Total Expenses: | (1,964,526.26) |
| | |
| Net Income: | -$462,865.29 |

## VI. BUDGET PROJECTION

The budget projection is based on figures proposed in the 2010-2011 budget for the Village of Washington Park which has not been approved by the Village. The figures in the budget projection are subject to further review and it is anticipated that this article of the Disclosure Statement will be amended prior to submission of the Plan of Adjustment for voting.

### REVENUE

Total Revenues:                                               $2,395,000.00

### EXPENSES

Expenses:

| | |
|---|---:|
| Accounting/Auditor | $62,500.00 |
| Engineer/Architect | 40,000.00 |
| Legal | 116,000.00 |
| Elected Official/Expenses | 120,000.00 |
| Salaries & Wages | 1,311,500.00 |
| Payroll Taxes | 160,000.00 |
| Health Insurance | 109,100.00 |
| Workmen's Comp Insurance | 52,250.00 |
| General Liability | 43,700.00 |

| | |
|---|---:|
| Utilities | 64,600.00 |
| Equipment Rental | 24,000.00 |
| Landfill | 38,600.00 |
| Equipment Purchase | 199,500.00 |
| Telephone | 24,000.00 |
| Property & Casualty Insurance | 38,200.00 |
| Automobile Expenses/Mileage | 15,900.00 |
| Maintenance | 58,600.00 |
| Uniforms Allowances | 21,500.00 |
| Membership/Dues | 11,000.00 |
| Office Supplies/Equipment | 22,700.00 |
| Travel/Training | 31,000.00 |
| Survey/Planning | 7,000.00 |
| Marketing/Printing | 15,500.00 |
| Postage | 14,500.00 |
| Contracts | 431,690.00 |

Total Expense: ($3,033,340.00)

Net Income: -$638,340.00

## VII.  SUMMARY OF PLAN

A. Description of Plan

The Debtor shall continue to operate as a municipality of the State of Illinois pursuant to all rules and statutes applicable there to.

Payments under the Plan of Adjustment shall be made according to the treatment of the claims as set forth in Article 4. Regular monthly expenses shall be paid according to past practices. It is the Debtor's intent to pay off this Plan within the next ten (10) years. However, the Debtor will make additional payments when possible.

All assets of the estate shall vest in the Debtor upon Confirmation subject to the liens identified in Article 4.

B. Payments Under the Plan

Plan payments shall be made in accordance with Articles 4 of the Plan.

## VIII.  PURPOSE OF DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide the holders of Claims and interest against the Debtor with sufficient information to enable them to make an informed judgment about the Plan.  In the opinion of the Debtor, the information contained herein is material, important and necessary for the holders of impaired claims to make an informed decision in exercising their right to vote for acceptance or rejection of the Plan as presently on file with the Court.  Only holders of impaired claims are entitled to vote on the Plan.  All other creditor classes are deemed to have accepted the Plan under the Bankruptcy Code.

*A COPY OF THE PLAN ACCOMPANIES THE DISCLOSURE STATEMENT.  THE DEFINITIONS CONTAINED IN THE PLAN APPLY TO THIS DISCLOSURE STATEMENT AND THIS DISCLOSURE STATEMENT IS QUALIFIED IN TIS ENTIRETY BY AND IS SUBJECT TO THE PLAN.  THE PLAN SHOULD BE REVIEWED FULLY IN CONNECTION WITH YOUR REVIEW OF THIS DISCLOSURE STATEMENT.*

Accompanying this Disclosure Statement are the following: (a) a copy of the Plan; (b) a copy of the notice fixing the time for the filing of acceptances or rejections of the Plan and for a hearing on confirmation of the Plan (the "Confirmation Hearing"); and (c) the ballot form to be used to indicate acceptances or rejections of the Plan.  Please verify that all four of these items are enclosed.  If any of the materials are not enclosed, or if your ballot form is damaged or lost, or if you have any questions concerning voting procedures , you may contact Donald M. Samson at the address below.

## IX.    VOTING PROCEDURES

A.  <u>General</u>

The Court has directed that acceptances and rejections of the Plan be filed in writing by the holders of all claims against the Debtor entitled to vote, on or before the close of business as set forth on the Ballot and in the Notice accompanying the Disclosure Statement.  A ballot for voting is enclosed herewith.  Only the holders of impaired claims are entitled to vote on the Plan.  Holders of such claims may do so by completing and mailing the enclosed ballot form to: Donald M. Samson, 226 West Main Street, Suite 102, Belleville, IL  62220.

*IMPORTANT*:  Your ballot must be received timely, or your vote will not be counted.  Please mail your ballot now.

B.  <u>Confirmation of the Plan</u>

The Court has scheduled a confirmation hearing as set forth on Notice sent herewith to the holders of all claims against and interest in the Debtor.  At the confirmation hearing, the Court will enter an order confirming the Plan (the "Confirmation Order") if sufficient acceptances of

the Plan have been received by the holders of allowed impaired claims, and if conditions to confirmation of the Plan and statutory requirements have been met. If the Plan is confirmed, the Plan will be implemented commencing on the Effective date.

As the holder of an impaired claim against the Debtor, your vote on the Plan is important. In order for the Plan to be accepted and thereafter confirmed by the Court, it must be accepted or deemed accepted by each class of Claims and Interest contained in the Plan. A class of Claims has accepted the Plan if it has been accepted by creditors holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number for the allowed claims of such class held by creditors who have accepted or rejected the Plan. A class that is not impaired under the Plan is deemed to have accepted the Plan. Similarly, the Debtor is deemed to have accepted the Plan due to the fact that it has proposed the Plan. The Debtor is only soliciting the acceptances of the holders of claims in Class 1-8. *CREDITORS WHO FAIL TO VOTE WILL NOT BE COUNTED IN THE CALCULATION OF WHETHER THEIR CLASS HAS ACCEPTED THE PLAN.*

## X.    INFORMATION PROVODED HEREIN

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. TO A LARGE EXTENT, THE INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT WAS OBTAINED FROM OTHER DOCUMENTS, INCLUDING DOCUMENTS FILED WITH THE COURT. NO STATEMENTS AS TO THE FINANCIAL CONDITION, MANAGEMENT, BUSINESS OPERATIONS OR PROFITABILITY OF THE DEBTOR IS AUTHORIZED EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT.

THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN AS ACCURATE. HOWEVER, THE DEBTOR BELIEVES SUCH INFORMATION TO BE SUBSTANTIALLY ACCURATE AND BELIEVES THAT CREDITORS AND OTHER PARTIES IN INTEREST CAN REASONABLY RELY THEREON UNLESS OTHERWISE NOTED HEREIN. FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AN AUDIT, UNLESS OTHERWISE INDICATED.

ALL CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT IN ORDER TO FORMULATE AN INFORMED OPINION AS TO THE MANNER IN WHICH THE PLAN AFFECTS ALL CLAIMS AGAINST OR INTEREST IN THE DEBTOR AND IN THE CASE OF IMPAIRED CLAIMS, TO DETERMINE WHETHER TO ACCEPT THE PLAN. A COPY OF THE PLAN ACCOMPANIES THIS DISCLOSURE STATEMENT. THE PLAN SHOULD BE READ CAREFULLY IN CONJUNCTION WITH THIS DISCLOSURE STATEMENT.

THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT FOR DISTRIBUTION CONSTITUTES NEITHER AN ENDORSEMENT OF THE PLAN NOR A GUARANTY OF THE ACCURACY OF THIS DISCLOSURE STATEMENT.

## XI. CONCLUSION-SOLICITATION OF ACCEPTANCES

The acceptances of all persons holding allowed claims in Classes 1-8 are herby solicited to vote on the Plan of Reorganization proposed by the Debtor.

The Debtor believes that acceptance and confirmation of the Plan is in the best interest of all creditors of the Debtor and will result in the maximum recovery for all of the creditors of the Debtor.

Dated this 19th day of August, 2010.

**VILLAGE OF WASHINGTON PARK**

/s/ Cynthia Stovall-Hollingsworth_____
By: Cynthia Stovall-Hollingsworth, Mayor

/s/ Donald M. Samson_____
DONALD M. SAMSON
Attorney for Debtor
226 W. Main Street, Suite 102
Belleville, IL 62220
618-235-2226